453 P.2d 370

Luther Eugene SANDERSON, Plaintiff-
Appellee,

v.

NEW MEXICO STATE RACING COMMIS-
SION, Floyd B. Rigdon, Chairman, Harvey
Foster, Executive Secretary, H. J. Lee,
Charles Loughridge, C. J. Warren, and
Guido Zecca, Members of the New Mexico
State Racing Commission, Defendants-Ap-
pellants.

No. 8610.

Supreme Court of New Mexico.

March 17, 1969.

Rehearing Denied April 30, 1969.

Boston E. Witt, Atty. Gen., Roy G. Hill, Deputy Atty. Gen., Santa Fe, for appellants.

McAtee, Marchiondo & Michael, Patrick L. Chowning, Albuquerque, for appellee.

## OPINION

COMPTCN, Justice.

The petitioner is an owner and trainer of a race horse named Countess Eureka which won a race held at the New Mexico State Fair. A urine sample was taken as provided by the Rules of Racing and an analysis of this sample revealed an extremely low concentration of a drug in nature of procaine. A report of this analysis to the State Racing Commission stated that the low concentration indicated that the drug had not been used as a "blocking agent or a cambiotic" within forty-eight hours of the race and that it was possible that the drug derived from the use of a topical ointment.

Without a hearing the commission by Ruling 311 suspended the petitioner and forfeited the purse won by Countess Eureka for a violation of Rule 352 of the Rules of Racing. Rule 352 provides that if the urine sample proves positive showing of the presence of any narcotic, stimulant, depressant, local anesthetic, analgesic, pyrasolodine or any derivative or compound thereof, the trainer is to be suspended by the stewards and the matter referred to the State Racing Commission, and the horse is to be disqualified and the owner is not allowed to participate in the purse distribution.

Thereafter the commission granted a hearing on the matter and at the conclusion issued Ruling 315 reinstating the petitioner, but provided that the purse money should remain forfeited for having violated Rules 352 and 347. Rule 347 provides that the person in charge of a horse must guard his horse against the administration of drugs or the use of any appliance which could affect the speed and stamina of the horse. Rule 352, as noted, requires that the urine or other samples from a race horse be free of drugs.

Thereupon the petitioner brought this action in mandamus to compel the commission to set aside certain of its rulings, to compel the commission to strike from its records petitioner's suspension and to compel it to pay over the purse forfeited as a result of its rulings. An alternative writ was granted and, following a hearing, the writ was made permanent.

The first question posed is whether the writ of mandamus was properly issued under these circumstances. Conston v. New Mexico State Board of Probation & Parole, 79 N.M. 385, 444 P.2d 296; State v. McDonnell, 426 S.W.2d 11 (Mo. 1968). Generally mandamus will not lie to control the discretion of an administrative board. Conston v. New Mexico State Board of Probation & Parole, supra; Ross v. State Racing Commission, 64 N.M. 478, 330 P.2d 701; State ex rel. Four Corners Exploration Co. v. Walker, 60 N.M. 459, 292 P.2d 329. But an exception to the general rule is recognized where the administrative board has acted unlawfully or wholly outside its jurisdiction or authority, or where it had abused its discretion. See Ross v. State Racing Commission, supra; State v. McDonnell, supra. While suspension of petitioner's license and forfeiture of the purse ordinarily are matters within the discretion of the commission and not reviewable on appeal, Ross v. State Racing Commission, supra; Drew v. Lawrimore, 380 F.2d 479 (4th Cir.1967), mandamus was available to petitioner to make certain that the commission did not exceed its authority under Section 60–6–7, N.M.S.A. 1953. Conston v. New Mexico State Board of Probation & Parole, supra.

The trial court based the issuance of the writ upon the grounds (1) that Rules 347

and 352 are unconstitutional, (2) that the commission did not proceed according to its rules, and (3) that Rulings 311 and 315 by the commission are not factually supported, hence, the action of the commission was unreasonable, arbitrary and unlawful.

■ The court then concluded that Rules 347 and 352 of the Rules of Racing are unconstitutional insofar as they create a presumption that operates to deny a fair opportunity to repel the presumption. The petitioner has not properly evaluated the rules; the rules do not create a presumption. Strict liability may be imposed by the state as a right to participate in horse races or to hold a license to do so. Sandstrom v. California Horse Racing Board, 31 Cal.2d 401, 189 P.2d 17, 3 A.L.R.2d 90; State ex rel. Spiker v. West Virginia Racing Commission, 135 W.Va. 512, 63 S.E.2d 831; Fogt v. Ohio State Racing Commission, 3 Ohio App.2d 423, 210 N.E.2d 730. Cf. Yarbrough v. Montoya, 54 N.M. 91, 214 P.2d 769. Here, the state has merely prescribed strict liability under which it will grant a licensee to particpate therein, the terms of compliance by rules and regulations promulgated by the commission, and likewise the terms which the license may be suspended or revoked. A license is a privilege and not a right within the meaning of the due process clause of the state and federal constitutions and in it licensees have no vested property rights. Ross v. State Racing Commission, supra. See also Yarbrough v. Montoya, supra; Chiordi v. Jernigan, 46 N.M. 396, 129 P.2d 640. Rules 347 and 352 do not deprive appellee of any constitutional right.

■ The next basis advanced for the issuance of the writ was that the commission did not proceed according to its rules. Specifically, the court found that the stewards did not make the original determination as to the presence of drugs in the horse Countess Eureka as provided for by Rules 347 and 352. We do not agree that such a finding is a valid basis for the conclusion that the commission abused its discretion. It should be noted that Rule 8 of the Rules of Racing provides:

"The Commission may make exceptions or waive any rule or rules in individual instances as in the judgment of the Commission it may be deemed avisable."

We think it was entirely proper in the circumstances in question that the commission make an exception to the requirement that the stewards make the original determination. The evidence is undisputed that the race in question was on the last day of the racing season at the state fair, and when the chemist's report was received some few days later, racing had ended and the stewards had departed. A requested finding to this effect was refused; the refusal was error. The urine sample was taken and sent to the chemist for analysis in accordance with normal procedures. We think it fair to state that the reason that the stewards are to make the original determination under the rules in question is to relieve the commission of the burden of examining the great number of reports that result from the many races that occur. It is to be noted that whether it is the stewards or the commission which make the original determination as to the presence of drugs, the determination is based upon the same chemical analysis report. We cannot say that the commission abused its discretion in the circumstances of this case where the state fair had ended and there were no stewards available to act.

■ Initially, was there a factual basis for the issuance of the writ? We think not. The court found that there was no evidence introduced that would show that a drug was administered for the purpose of affecting the speed or stamina of the horse. Rulings 311 and 315 were based part on violation of Rule 352, and violations of that rule support the sanctions rendered. Rule 352, however, does not have language that speaks in terms of intent or affecting speed or stamina. Since the risk is so great that a race might be conducted unfairly when a horse has drugs

in its body, the commission in its discretion could and did provide that the urine or other sample be totally free of drugs under the authority of Section 60–6–7, N.M.S.A. 1953.

The court next found exculpation from the absolute freedom requirement of Rule 352 in Rule 351. Rule 351 of the Rules of Racing provides: "Nothing *in the foregoing* shall be deemed to include water, heat or cold treatment, or customary liniments or salves, provided the same be applied externally only." (Emphasis added). While the evidence is clear that the presence of the drugs in the horse derived from the use of topical ointments, it does not rule out the application of Rule 352.

In view of what has been said, we conclude that the writ of mandamus was improvidently issued. Hence, we do not reach the question whether the purse should be refunded.

The judgment should be reversed.

It is so ordered.

NOBLE, C. J., and CARMODY, J., concur.